UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DELAWARE COUNTY, PENNSYLVANIA,<br><br>    Plaintiff,<br><br>v.<br><br>PURDUE PHARMA L.P., *et al*,<br><br>    Defendants. | Cause No. 18cv05627 |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND AND REQUEST FOR EXPEDITED CONSIDERATION

Pursuant to 29 U.S.C. § 1447(c), and for the reasons below, the Court should remand this action back to the Delaware County Court of Common Pleas. This lawsuit involves claims brought on behalf of a single plaintiff, Delaware County, Pennsylvania, against various opioid manufactures, distributors, and pharmacies – many of which are Pennsylvania citizens. All of the claims asserted arise under Pennsylvania law. There is simply no basis for federal jurisdiction. Removal was thus entirely improper and should be promptly corrected by remand back to the Delaware County Court of Common Pleas.

Defendant Walgreen Eastern Co. ("Walgreens") removed this case under the "class action provision" of the Class Action Fairness Act ("CAFA"), arguing in the shadow of contrary, dispositive, binding authority that this matter is "essentially a class action" (thereby subject to CAFA removal) because, it claims, the citizens of Delaware County, Pennsylvania are the real parties in interest and Delaware County is merely acting in a representative capacity. Notice of Removal (Dkt. No. \*\*) at ¶ 9. This argument confuses the unrelated concepts of who the "real parties in interest" are *for the purposes of evaluating* diversity, and the defining characteristics of class action. The Supreme Court has already rejected this approach in a decision which post-dates all relevant authority cited in the removal papers. *See Mississippi ex rel.*

1

*Hood v. AU Optronics Corp.*, 571 U.S. 161, 173-74 (2014). *AU Optronoics* makes clear that, even when a governmental entity sues on behalf of its citizens, the case is not removable under CAFA. Rather, as the lower court decisions in *AU Optronics* make clear, the sole determinant of whether an action is a "class action" under CAFA is whether it is brought pursuant to Rule 23 or a state-law procedural equivalent. Moreover, unlike in *AU Optronics,* Delaware County's action does not seek recovery in a *parens patriae* capacity on behalf of its citizens (as the State of Mississippi did in that case); rather the County sues only for recovery of *its own damages*. Thus, even if Walgreens were correct that the Court should consider who the "real parties in interest" are – which it is not – in this case, Delaware County sues for its own financial injuries and is the only real party in interest.

Finally, given that Walgreens' removal is a transparent attempt to gain a procedural advantage by way of transfer to *In Re: National Prescription Opiate Litigation*, MDL 2804, based on an improper, if not frivolous, removal, *see* Notice of Potential Tag-Along Action (relevant pages excerpted as Exhibit A), Plaintiff respectfully requests the Court consider its motion to remand on an expedited basis in order to remand this matter prior to transfer.[1]

## BACKGROUND

This case arises from the worst man-made epidemic in modern medical history—the misuse, abuse, and over-prescription of opioids. The opioid crisis arose from pharmaceutical manufacturers' deliberately deceptive marketing strategy to expand opioid use, together with pharmaceutical distributors' equally deliberate

---

[1] Expedited consideration is especially important here because, pursuant to an order dated February 16, 2018, the MDL court has placed a moratorium on the filing of remand motions.  *See* February 16, 2018 Order (attached as Exhibit B). Thus, as Defendants are well aware, if the case is transferred to the MDL before this Court rules on this motion for remand, Plaintiff will be precluded from seeking remand in the MDL court until some unspecified date in the future.

2

efforts to evade restrictions on opioid distribution. Manufacturers and distributors alike acted without regard for the lives that would be trammeled in pursuit of profit. Since the push to expand prescription opioid use began in the late 1990s, the death toll has steadily climbed, with no sign of slowing. The number of opioid overdoses in the United States rose from 8,000 in 1999 to over 20,000 in 2009, and over 33,000 in 2015. In the twelve months that ended in September 2017, opioid overdoses claimed 45,000 lives.

Pennsylvania in particular is experiencing an unprecedented epidemic of drug related overdose death. In Pennsylvania, there was a 20.1% increase in overdose deaths related to opioids in 2015 as compared to the prior year. More than 4,600 Pennsylvania residents died as a result of drug abuse in 2016. Most of these overdoses of Pennsylvania residents involved prescription opioids, heroin, and fentanyl. In 2014, Delaware County (the "County") had the fourth-highest number of reported overdose deaths in Pennsylvania according to the DEA, with 56 of 118 overdose deaths being related to opioids. According to data released by the Delaware County Medical Examiner's Office, in 2015, there were 204 total drug deaths in the County. Of those, 121 were opioid-related. The commission of criminal acts to obtain opioids is an inevitable consequence of opioid addiction, and Delaware County is no exception. For example, in the summer of 2017, three Delaware County men, including a pharmacist, were indicted on charges related to an illegal opioid distribution ring. Each of the three men were charged with conspiracy to distribute oxycodone. Two of the three men were charged with murder of a co-conspirator. Officials estimate that the trio acquired more than $2.7 million in drug proceeds. On January 10, 2018, the Governor of Pennsylvania declared the opioid epidemic a state-wide "disaster emergency."

As detailed in the pleadings in this case, the opioid epidemic did not simply occur on its own. It resulted from the concerted, unlawful actions of companies that

manufacture, market, distribute, and sell these dangerous products. In particular, Defendants' conduct involved two schemes: (1) a marketing scheme involving the false and deceptive marketing of prescription opioids, which was designed to dramatically increase the demand for and sale of opioids and opioid prescriptions; and (2) a supply chain scheme, pursuant to which the various entities in the supply chain failed to design and operate systems to identify suspicious orders of prescription opioids, maintain effective controls against diversion, and halt suspicious orders when they were identified, thereby contributing to the oversupply of such drugs and fueling an illegal secondary market. Together, these schemes resulted in dramatic increases in opioid prescribing, in diversion of opioids, and in addiction, death, and all of the social ills connected with widespread and uncontrolled use of these dangerous narcotics.

The County commenced its action in the Court of Common Pleas, Delaware County, on September 21, 2017. It alleged that it "spends millions of dollars each year to provide or pay for the health care, pharmaceutical care, and other necessary services and programs on behalf of indigents and otherwise eligible residents, including payments for prescription opium-like painkillers" and that it "also provides a wide range of other services on behalf of its residents, including services for families and children, public assistance, emergency and ambulatory services, and law enforcement." The County asserts a claim for public nuisance, as well as Pennsylvania common law and statutory claims sounding in fraud, negligence, conspiracy, and unjust enrichment.

Numerous other counties and cities in Pennsylvania commenced their own, similar lawsuits. In late January 2018, certain defendants (joined or supported by other defendants as well as by plaintiffs in the majority cases then pending in courts in Pennsylvania) moved to coordinate Pennsylvania state-court opioid litigation in Delaware County pursuant to Pennsylvania Rule of Civil Procedure 213.1. The

motion sought coordination of more than a dozen then-pending Pennsylvania actions. "as well as other similar cases that may follow." Joint Mot. to Coordinate ¶ 2 (Jan. 25, 2018) (attached as Exhibit C). On March 26, 2018, the Delaware County Court of Common Pleas coordinated the present action and fifteen others for pretrial proceedings. *See* Order (Mar. 26, 2018) (attached as Exhibit D). Since then, additional actions have been identified and transferred to Delaware County for coordinated treatment with this case. On November 14, 2018, the County filed its First Amended Complaint which Walgreens subsequently removed to this Court on December 31, 2018 arguing that this case is removable because it is "basically a class action."

## ARGUMENT

## THIS CASE SHOULD BE REMANDED FOR LACK OF FEDERAL JURISDICTION

This case should be remanded for lack of federal jurisdiction. The sole basis asserted by Walgreens in its removal papers is jurisdiction under CAFA, but this case was not brought as a class action and cannot be treated as one for purposes of jurisdiction under CAFA. Rather, the law is clear that only the state court's procedural rules and statutory scheme determine whether a matter was brought as a class action. Indeed, Walgreens' approach was rejected by the Supreme Court in *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161 (2014), which is dispositive here. Even if it were not, Delaware County does not bring any of its claims in a *parens patriae* capacity and its citizens would not be the "real parties in interest" even if that analysis were relevant here.

    A.    **Under *AU Optronics,* CAFA Jurisdiction Does Not Apply to Actions Brought by Governmental Entities**

In *AU Optronics Corp.*, the State of Mississippi brought suit alleging that the defendant had formed an "international cartel to restrict and raise prices in the LCD

market." 571 U.S. at 166. AU Optronics originally attempted to remove the case to federal court, making arguments under both the "class action" and "mass action" provisions of CAFA. As Walgreens does here, AU Optronics attempted to justify its removal by arguing that "because the complaint also seeks damages for injuries incurred by Mississippi's consumers and local governments, those consumers and local governments are also real parties in interest" and Mississippi's suit "is one within the meaning of CAFA" despite not being brought under Rule 23 or the state equivalent. *Mississippi ex rel. Hood v. AU Optronics Corp.*, 876 F. Supp. 2d 758, 767 (S.D. Miss.), *rev'd and remanded*, 701 F.3d 796 (5th Cir. 2012), *rev'd and remanded*, 571 U.S. 161, 134 S. Ct. 736, 187 L. Ed. 2d 654 (2014).

Importantly for this case, the district court rejected AU Optronics's arguments regarding the "class action" provision of CAFA out of hand, finding "[t]his suit is not a CAFA class action because it was not brought pursuant to Federal Rule of Civil Procedure 23 or a "similar State statute or rule of judicial procedure." *Id*. at 769 (quoting 28 U.S.C. § 1332(d)(1)(B)). Moreover, the court found the defendant's attempts to set aside the statutory requirements of CAFA in favor of purportedly adverse legislative history were misplaced "[b]ecause CAFA unambiguously defines class action" and therefore the Court chose to follow the "'understandable bright-line rule' articulated in *In re Vioxx Prod. Liab. Litig.*" 843 F. Supp. 2d 654, 664 (E.D. La. 2012) ("Congress chose to define 'class action' not in terms of joinder of individual claims or by representative relief in general, but in terms of the statute or rule the case is filed under. 28 U.S.C. § 1332(d)(1)(B). This is a statutory requirement; no amount of piercing the pleadings will change the statute or rule under which the case is filed. If this is a formalistic outcome, it is a formalism dictated by Congress. Moreover, it is an understandable bright-line rule.") (internal citations omitted).

The Fifth Circuit subsequently agreed with the district court's conclusion on this issue, noting that "[o]ur analysis begins by considering whether Mississippi's suit

against the LCD manufacturers qualifies as a 'class action,' a question that can be answered quickly in the negative." *Mississippi ex rel. Hood v. AU Optronics Corp.*, 701 F.3d 796, 799 (5th Cir. 2012), *rev'd and remanded*, 571 U.S. 161, 134 S. Ct. 736, 187 L. Ed. 2d 654 (2014). In so finding, the court, again, reasoned that the statutory causes of action brought by the State were not brought as class actions, nor did the statutes themselves compel findings resembling adequacy, numerosity, commonality, and typicality which are the hallmarks of Rule 23. *Id.* at 799.[2] However, the Fifth Circuit *did* find that the matter qualified as a "mass action" under CAFA because Mississippi consumers were the real parties in interest by way of the matter being brought by their government under its *parens patriae* authority which thereby satisfied the 100 claims requirement of CAFA. *Id.* at 802.

While AU Optronics did not bother to appeal the Fifth Circuit's resounding rejection of its argument as to the class action provision of CAFA (identical to that made by Walgreens here), the Supreme Court did consider (and reject) the Fifth Circuit's ruling that an action by a governmental entity constituted a "mass action" under CAFA. In reversing the Fifth Circuit, the Supreme Court noted that the defendant's "position is ultimately that '[t]his action is similar to a class action,' such that it should be removed" and went on unequivocally to reject that position, holding:

---

[2] Likewise, the only claim noted by Walgreens as being illustrative of the merits position – Plaintiff's statutory claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 – 201-9.3, *et seq*. ("UTPCPL") – belies Walgreens' own argument. Specifically, like the statutory antitrust claim brought by Mississippi in *Hood*, the UTPCPL does not include requirements that resemble the adequacy, numerosity, commonality, and typicality requirements of class action lawsuits under Rule 23 when brought by the government under 73 P.S. § 201-8. Based on this same reasoning, the Fifth Circuit in *Hood* found that the statutory antitrust claim was not "similar" to Rule 23 and therefore found that "the district court did not err in finding that the suit does not qualify as a 'class action' under the CAFA." *Mississippi ex rel. Hood v. AU Optronics Corp.*, 701 F.3d 796, 799 (5th Cir. 2012), *rev'd and remanded*, 571 U.S. 161, 134 S. Ct. 736, 187 L. Ed. 2d 654 (2014)

7

"[I]f Congress had wanted representative actions brought by States as sole plaintiffs to be removable under CAFA on the theory that they are in substance no different from class actions, *it would have done so* through the class-action provision . . .") (emphasis added).  That is, the Court recognized that Congress *could have* made governmental actions removable as class actions under CAFA but it did not do so – though this was hardly a novel concept even when affirmed by the Supreme Court in 2014.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 07-1827 SI, 2011 WL 560593, at *7 (N.D. Cal. Feb. 15, 2011) ("The Court concludes that California's *parens patriae* action is not a 'class action' within the meaning of CAFA. California's complaint was not filed 'under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action.' 28 U.S.C. § 1332(d)(1)(B)."); *Connecticut v. Moody's Corp.*, 664 F. Supp. 2d 196, 202 (D. Conn. 2009) ("This is a state enforcement action, and CAFA does not apply to such actions.") .

Beyond the Supreme Court's decision in *Au Optronics*, we know definitively that Congress made the conscious decision *not* to make governmental actions subject to CAFA removal for two reasons.  First, earlier versions of CAFA did not include governmental claims but did include "private attorney general" actions.  *See e.g.,* H.R. 2341, 107th Cong. § 4(a)(2) (2001) ("For purposes of this section and section 1453 of this title, a civil action that is not otherwise a class action as defined in paragraph (1)(B) of this subsection shall nevertheless be deemed a class action if . . . the named plaintiff purports to act for the interests of its members (who are not named parties to the action) or for the interests of the general public, seeks a remedy of damages, restitution, disgorgement, or any other form of monetary relief, and is not a State attorney general.")  That is, even when Congress considered including attorney general actions in the "class action" provision of CAFA, it still explicitly excluded those actually brought by the governments themselves.  Secondly, Congress declined

8

to amend the bill to specifically exclude governmental actions as "class actions" after complaints from state attorneys general because Congress deemed it necessary given that the bill already restricted the definition of class actions to those claims brought under Rule 23 or the equivalent:

> State attorneys general have authority under the laws of every State to bring enforcement action to protect their citizens. Sometimes these laws are *parens patriae* cases, similar to class actions in the sense that the State attorney general represents the people of that State. In other instances, their actions are brought directly on behalf of that particular State. *But they are not class actions*; rather, they are very unique attorney general lawsuits authorized under State constitutions or under statutes.
>
> One reason this amendment is not necessary is because our bill will not affect those lawsuits. Our bill provides class actions under that term "class action" as defined to mean any civil action filed in a district court of the United States under rule 23 of the Federal Rules of Civil Procedure or any civil action removed to a district court that was originally filed under State statute or rule authorizing an action to be brought by one or more representatives as a class action.
>
> The key phrase there is "class action." Hence, *because almost all civil suits brought by State attorneys general are parens patriae suits, similar representative suits or direct enforcement actions, it is clear they do not fall within this definition. That means that cases brought by State attorneys general will not be affected by this bill.*

151 Cong. Rec. S1157-02, 151 Cong. Rec. S1157-02, S1163, 2005 WL 309648 (statement of Sen. Grassley) (emphasis added). This point was repeatedly echoed by Sen. Grassley's colleagues in the Senate. *See e.g.,* 151 Cong. Rec. S1157-02, 151 Cong. Rec. S1157-02, S1164, 2005 WL 309648 ("This statutory definition makes it perfectly clear that the bill applies only to class actions, and not *parens patriae* actions. Class actions being those lawsuits filed in Federal district court under rule 23 of the Federal rules of civil procedure or lawsuits brought in State court as a class action. Neither of these conditions are met when compared to the nature of a *parens patriae* action, and consequently, are excluded from the reach of this bill.") (statement of Sen. Hatch); *Id*. at S1162 ("[T]he Senator from Arkansas alluded to statutes that are typical of

9

every State-deceptive trade practice acts and consumer protection statutes-which in my State and I believe in virtually every other State specifically authorize the attorney general to seek remedies on behalf of aggrieved consumers. This bill certainly would not encroach on that authority.") (Statement by Sen. Cornyn). Thus it is obvious that governmental actions were not included within the scope of CAFA's statutory language *because Congress did not intent for them to be included.*

For all of these reasons, Walgreens' argument here is baseless. Perhaps that is why of the three and a half pages Walgreens devotes to the "it's basically a class action" argument, not a single case it relies upon post-dates the Supreme Court's 2014 decision in *Hood* – or even the 2012 decisions by the district court and the Fifth Circuit from the earlier proceedings. Nor does Walgreens offer any novel arguments beyond those already rejected by Congress; the collective decisions in *Hood*; or countless district and circuit courts in between. Quite simply, every court to consider Walgreens' position since *Hood* (and many before then) has found it dispositive for both "class action" and "mass action" CAFA removals.[3] The result here should be no different.

---

[3] *See e.g., W. Virginia ex rel. McGraw v. Bristol Myers Squibb Co.*, No. CIV.A. 13-1603 FLW, 2014 WL 793569, at *2 (D.N.J. Feb. 26, 2014) ("As a preliminary issue, Defendants conceded during oral argument that *parens patriae* suits brought by state attorney generals are generally not removable as "class actions" under CAFA. In fact, during the pendency of this motion, the Supreme Court addressed this issue in *Mississippi ex rel. Hood v. AU Optronics Corp.*, —— U.S. ——, 134 S.Ct. 736, —— L.Ed.2d —— (2014). The Court essentially held that when a state brings suit on behalf of its citizens and it is the only named plaintiff, the suit is not removable under CAFA. Various other circuits have reached the same conclusion. *See, e.g., Purdue Phrama L.P. v. Kentucky*, 704 F.3d 208 (2d Cir.2013); *LG Display Co., LTD. v. Madigan*, 665 F.3d 768, 774 (7th Cir.2011); *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 848–49 (9th Cir.2011). Accordingly, this Court lacks jurisdiction under CAFA in this case.") (internal citations to record omitted); *Illinois v. AU Optronics Corp.*, 794 F. Supp. 2d 845, 858 (N.D. Ill. 2011) ("[T]he Court concludes that this action is not a 'class action' under CAFA. Instead, it is 'a statutorily authorized action'

B.     **Delaware County Does Not Bring Suit in a *Parens Patriae* Capacity on Behalf of Its Citizens**

Even if CAFA did authorize the Court to consider the "real parties in interest" to determine whether an action is a class action – and, as discussed above, it does not – such an analysis would be of no help to Walgreens here. In the *AU Optronics* case discussed above, the State of Mississippi sued in a *parens patriae* capacity, seeking recovery for injuries incurred by Mississippi's consumers and local governments. Even then, the Supreme Court declined to treat those consumers and local governments as the real parties in interest. Here, however, the County sues only for its *own* financial damages. Nowhere in the Complaint do the words "*parens patriae*" appear; on the contrary, the Complaint repeatedly makes clear that the County is suing to recover *its own losses*. Thus, the County alleges:

> Defendants' conduct has had severe and far-reaching public health, social services, and criminal justice consequences, *including the fueling of addiction and overdose from illicit drugs such as heroin. The costs are borne directly by Plaintiff and other governmental entities*. These necessary and costly responses to the opioid crisis include, but are not limited to, the handling of emergency responses to overdoses, providing addiction treatment, handling opioid-related investigations, arrests, adjudications, and incarceration, treating opioid-addicted newborns in neonatal intensive care units, burying the dead, and placing of children in foster care.
>
> The burdens imposed on Plaintiff are not the normal or typical burdens of government programs and services. Rather, *these are extraordinary costs and losses* that are directly caused by Defendants' illegal actions. Defendants' conduct has created a public nuisance and a blight. *Governmental entities, and the services they provide their citizens, have been strained to the breaking point by this public health crisis*.

Complaint ¶¶ 19-20 (emphasis added). Even more explicitly, the Complaint alleges: "Plaintiff directly and foreseeably sustained all economic damages alleged herein.

---

filed 'on the State's behalf' by its top legal officer, the Attorney General.") (internal citations omitted)

Defendants' conduct has exacted a financial burden for which the Plaintiff seeks relief. These damages have been suffered, and continue to be suffered, *directly by the Plaintiff.*" *Id.* at ¶ 788 (emphasis added).

For this reason, even if the law were as Walgreens imagines it to be – even if an action brought by a governmental entity seeking relief for injuries suffered by its citizens could be treated as a class action under CAFA – there would still be no federal jurisdiction here.  As the Complaint makes clear, *there are no real parties in interest here other than Delaware County itself.*  There is no conceivable basis on which this case can be treated as a class action under CAFA.

## CONCLUSION

For the forgoing reasons, this matter should be remanded back to the Delaware County Court of Common Pleas without further delay and prior to transfer to the Opioid MDL.  Furthermore, given that Walgreens' removal amounts to nothing more than a legally unsupported gamesmanship, Plaintiff respectfully requests expedited consideration of its motion.

Dated:  January 4, 2019   /s/ Tobias L. Millrood

_____
Harris L. Pogust (Atty I.D. No. 52721)
Tobias L. Millrood (Atty I.D. No. 77764)
Gabriel C. Magee (Atty I.D. No. 311646)
POGUST MILLROOD
161 WASHINGTON ST., SUITE 940
CONSHOHOCKEN, PA 19428
(610) 941-4204
tmillrood@pogustmillrood.com

Carmen P. Belefonte (Atty I.D. No. 08608)
Robert J. Mongeluzzi (Atty I.D. No. 36283)
Michael F. Barrett (Atty I.D. No. 42305)
SALTZ MONGELUZZI BARRETT & BENDESKY
20 WEST THIRD STREET
P.O. BOX 1670
MEDIA, PA  19063
610-627-9777

cbelefonte@smbb.com

Paul J. Hanly, Jr.
Jayne Conroy
Thomas I. Sheridan, III
Andrea Bierstein
SIMMONS HANLY CONROY LLC
112 Madison Avenue
New York, NY 10016
(212) 784-6401
phanly@simmonsfirm.com
    -and-
Amy. E. Garrett
Trent B. Miracle (PA Atty I.D. No. 312802)
Sarah Burns
SIMMONS HANLY CONROY LLC
One Court Street
Alton, IL 62002
(618) 259-2222
sburns@simmonsfirm.com

Daniel Schwarz (Atty I.D. No. 67020)
SCHWARZ MONGELUZZI, LLC
One Liberty Place
1650 Market Street, 51st Fl.
Philadelphia, PA 19103
dschwarz@sm-attorneys.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2019, I electronically transmitted the foregoing document to the Clerk of the United States District Court using the CM/ECF system for filing and service to all parties/counsel registered to received copies in this case.

/s/ Tobias L. Millrood

Tobias L. Millrood
